**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GENA M. KOMRADA, individually and
as Administrator of the Estate of
Michael J. Komrada

               Plaintiff,

   vs.

ABBVIE, INC.,

    and

ABBOTT LABORATORIES INC.

             Defendants.

**Case No. _____**

Jury Trial Demanded

## <u>COMPLAINT</u>

Plaintiff Gena Komrada, individually and as Administrator of the Estate of Michael Komrada, deceased, hereby files this Complaint, by and through counsel, against Defendants AbbVie, Inc. and Abbott Laboratories Inc. and states as follows:

## I. <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

### A. **INTRODUCTION**

1. This case involves the prescription drug AndroGel, which is manufactured, sold, distributed, and promoted by Defendants AbbVie, Inc. and Abbott Laboratories Inc. (hereinafter jointly "Defendants") as a testosterone replacement therapy.

2. Defendants misrepresented that AndroGel is a safe and effective treatment for hypogonadism and a condition they have referred to as "low testosterone," when in fact the drug

causes serious medical problems, including life threatening cardiac events, strokes, thrombolytic events, and death.

3.     In addition to other physiologic adverse health effects caused by AndroGel, AndroGel causes the hematocrit level to increase, thereby thickening the blood. This effect, if not monitored and controlled properly, can lead to life threatening cardiac events, strokes, thrombolytic events, and death.

4.     Defendants failed to adequately warn physicians about the risks associated with AndroGel and the monitoring required to ensure their patients' safety.

5.     Defendants engaged in aggressive, award-winning direct-to-consumer and physician marketing and advertising campaigns for AndroGel. Further, Defendants engaged in an aggressive unbranded "disease awareness" campaign to alert men that they might be suffering from "low T" or "low testosterone."

6.     According to the industry-leading Androgen Deficiency in Adult Males ("ADAM") or "Is it Low T?" quiz, the symptoms of "Low T" include being "sad or grumpy," "experiencing deterioration in the ability to play sports," and "falling asleep after dinner."[1] In fact, most doctors agree that such symptoms may be caused by an abundance of factors, the most prominent of which is the natural aging process.

7.     As a result of Defendants' aggressive advertising campaigns for AndroGel, diagnoses of "Low T" have increased exponentially. This surge in diagnoses has directly led to AndroGel's sales increasing to over $1.37 billion per year.

---

[1] *Available at* http://www.isitlowt.com/do-you-have-low-t/low-t-quiz.

8. However, consumers of AndroGel have been misled by Defendants as to the drug's safety and efficacy, and as a result have suffered injuries including life-threatening cardiac events, strokes, thrombolytic events, and death.

**B.     PARTIES**

9. At all times relevant hereto, Plaintiff Gena Komrada has been a citizen of Arlington, Virginia.

10. At all times relevant hereto, and prior to his death, Plaintiff's Decedent Michael Komrada was a citizen of Arlington, Virginia.

11. Plaintiff Gena Komrada is the duly appointed Administrator of the Estate of Michael Komrada (See Letters of Administration, attached hereto as **Exhibit 1**).  At all times relevant hereto, Plaintiff Gena Komrada was the wife of the decedent Michael Komrada.

12. Defendant AbbVie, Inc. is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 1 North Waukegan Road, North Chicago, Lake County, Illinois 60064.

13. Defendant Abbott Laboratories Inc. is a corporation and existing under the laws of the state of Illinois and maintains its principal place of business at 100 Abbott Park Road, Abbott Park, Illinois 60064.

14. By way of background, Unimed Pharmaceuticals Inc. originally developed AndroGel and sought FDA approval in 1999.  Before the drug was eventually approved by the FDA in 2000, Solvay Pharmaceuticals Inc. acquired Unimed Pharmaceuticals Inc. and subsequently brought AndroGel to market.   In 2010, Defendant Abbott Laboratories Inc. acquired Solvay's pharmaceutical division, which included AndroGel.   In 2013, Defendant

Abbott Laboratories Inc. created AbbVie, a company composed of Abbott's former proprietary pharmaceutical business, which included AndroGel.

### C.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because Defendants are incorporated and have their principal places of business in states other than the state in which the named Plaintiff resides.

16.     This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over the Defendants because the Defendants have their principal places of business in Illinois.

18.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district.  Venue is further proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because all Defendants are residents of this state.

### D.     FACTUAL BACKGROUND

#### General Allegations

19.     This action for damages is brought by Plaintiff Gena Komrada, duly appointed Personal Representative of the Estate of Michael Komrada.  Michael Komrada was prescribed and supplied with, received, and took and applied the prescription drug AndroGel as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged,

advertised for sale, prescribed, sold, or otherwise placed in the stream of interstate commerce by Defendants.

20.     Defendants' wrongful acts, omissions, and fraudulent misrepresentations were the direct and proximate cause of injury and death to Michael Komrada.

21.     At all times relevant hereto, the Defendants engaged in, or were successors in interest to entities engaged in, the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising for sale or selling the prescription drug AndroGel for the use and application by men, including, but not limited to, Michael Komrada.

22.     At all times relevant hereto, Defendants were authorized to do business within the states of Virginia and Illinois.

23.     At all times relevant hereto, Defendants and agents, officers, and directors of Defendants participated in, authorized, and directed the production and promotion of AndroGel when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of AndroGel, and thereby actively participated in the tortious conduct with resulted in the injuries and death suffered by Michael Komrada.

### Overview

24.     Hypogonadism is a specific and recognized condition of the endocrine system, which in men may involve the severely diminished production or nonproduction of testosterone.

25.     A study published in the Journal of the American Medical Association ("JAMA") in August 2013 entitled "Trends in Androgen Prescribing in the United States, 2001 – 2011"

indicated that many men who get testosterone prescriptions have no evidence of hypogonadism.[2] For example, one third of men prescribed testosterone had a diagnosis of fatigue, and one quarter of men did not even have their testosterone levels tested before they received a testosterone prescription.[3]

26.    Defendants coordinated a massive advertising campaign designed to convince men that they suffered from low testosterone. Defendants orchestrated a national disease awareness media blitz that purported to educate male consumers about the signs of low testosterone. The marketing campaign consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential AndroGel users, and online media including the website "IsItLowT.com."

27.    The television advertisements for AndroGel have suggested that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all of which are general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

28.    Defendants' national marketing campaign included the creation and continued operation of the website, "www.IsItLowT.com." The website asserts that millions of otherwise healthy men experience low testosterone and encourages male visitors to "Take the 'It is Low T' Quiz." The "Is it Low T" quiz asks men if they have experienced potential signs of low testosterone, including such questions as: "Have you experienced a recent deterioration in your

---

[2] Jacques Baillargeon, et al., *Trends in androgen prescribing in the United States, 2001 to 2011*, JAMA INTERNAL MEDICINE (Aug. 2013).

[3] *Id.*

ability to play sports?"; "Are you falling asleep after dinner?"; "Are you sad and/or grumpy?"; and "Do you have a lack of energy?"

29.    Dr. John Morley, director of endocrinology and geriatrics at the St. Louis University School of Medicine, developed this quiz at the behest of Dutch pharmaceutical company Organon BioSciences, in exchange for a $40,000 grant to his university. The pharmaceutical company instructed Dr. Morley, "Don't make it too long and make it somewhat sexy." Dr. Morley drafted the questionnaire in 20 minutes in the bathroom, scribbling the questions on toilet paper and giving them to his secretary the next day to type up. Dr. Morley admits that he has "no trouble calling it a crappy questionnaire" and that it is "not ideal." However, this is the "Low T Quiz" used on the "IsItLowT" website created and operated by Defendants.[4]

30.    Since the FDA approved AndroGel, Defendants have also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed, and that conditions associated with normal aging could be caused by low testosterone levels.

31.    Defendants have promoted AndroGel as an easy-to-use topical testosterone therapy. Defendants contrast AndroGel's at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

32.    Defendants convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendants' promises of safety and ease in using AndroGel. Although prescription testosterone therapy has been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies as a result of Defendants' AndroGel advertising campaign.

---

[4] Natasha Singer, *Selling that New-Man Feeling*, N.Y. TIMES (Nov. 23, 2013).

33.     What consumers received, however, were not safe drugs, but a product which causes life-threatening problems, including strokes, heart attacks, pulmonary embolisms, and blood clots, as well as death.

34.     Defendants successfully created a robust and previously nonexistent market for their drug.  Defendant Abbott Laboratories spent $80 million promoting AndroGel in 2012.  The company also spent millions of dollars on its unbranded marketing including television commercials and websites, www.IsItLowT.com and www.DriveForFive.com. These websites recommend that men have regular checkups with their physicians and undergo five tests: cholesterol, blood pressure, blood sugar, prostate-specific antigen, and testosterone.

35.     Defendants' advertising campaign paid off in a return of $1.4 billion in sales during the past year, making AndroGel the highest-selling androgen drug in the United States. Sales of replacement therapies have more than doubled since 2006 and are expected to triple to $5 billion by 2017, according to forecasts by Global Industry Analysts.[5]

36.     In early 2013, Medical Marketing & Media named two AbbVie executives as "the all-star large pharma marketing team of the year" for promotions of AndroGel and unbranded efforts to advance low T.[6]

37.     Defendants' marketing campaign for AndroGel sought to create an image and engender a belief among consumers and physicians that low testosterone affects an exceedingly large number of men in the United States and that the use of AndroGel is safe for human use, even though Defendants knew this to be false.

---

[5] Shannon Pettypiece, *Are Testosterone Drugs the Next Viagra?*, BLOOMBERG BUSINESSWEEK (May 10, 2012), *available at:* http://www.businessweek.com/articles/2012-05-10/are-testosterone-drugs-the-next-viagra.

[6] *See* Singer, *Selling That New-Man Feeling*, *supra*; *see also* Larry Dobrow, *All-star large pharma marketing team of the year: Androgel*, MEDICAL MARKETING & MEDIA (Jan 2, 2013), *available at:* http://www.mmm-online.com/all-star-large-pharma-marketing-team-of-the-year-androgel/article/273242/.

38.     A number of studies associate testosterone use in men with an increased risk of heart attack and strokes.

39.     In 2010, a New England Journal of Medicine study entitled "Adverse Events Associated with Testosterone Administration"[7] was discontinued after a notably high number of men in the testosterone group suffered adverse events.

40.     In November 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels,"[8] which indicated that testosterone therapy increased the risk of death, heart attack, and stroke by about 30%.

41.     On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men,"[9] which indicated that testosterone could double the risk of heart attacks in men over 65 years old and men younger than age 65 with a previous diagnosis of heart disease.

**Factual Allegations Common to All Causes of Action**

42.     The FDA approved AndroGel 1% on February 28, 2000 for the treatment of adult males who have low or no testosterone. AndroGel 1.62% was more recently approved by the FDA, in April 2011. After FDA approval of AndroGel 1%, AndroGel was widely advertised and marketed by Defendants as a safe and effective testosterone replacement therapy.

43.     AndroGel is a hydroalcoholic gel containing testosterone in either 1% or 1.62% that users are instructed to apply to their chest, arms, or stomach. After application, the product

---

[7] Shehzad Basaria, M.D., et al., *Adverse Events Associated with Testosterone Administration*, THE NEW ENGLAND J. OF MED. (July 8, 2010).

[8] Rebecca Vigen, M.D., et al., *Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels*, JAMA (Nov. 6, 2013).

[9] William D. Finkle, et al., *Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men*, PLOS ONE (Jan. 2014).

enters the body through transdermal absorption. The AndroGel 1.62% product also contains isopropyl myristate as an ointment and ethanol for absorption enhancement.

44.     Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

45.     Testosterone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

46.     In men, testosterone levels normally begin a gradual decline after the age of 30.

47.     The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on many factors, including sleep, time of day, and medication. As a result, many men who may have testosterone levels below 300 ng/dl on one day will have normal testosterone levels the next.

48.     AndroGel may produce dangerous side effects in patients who use the drug, including but not limited to myocardial infarction, stroke, pulmonary embolism, and death.

49.     In some patient populations, AndroGel use may increase the incidence of adverse events and death by over 500%.

50.     AndroGel has been linked to several severe and life-changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied AndroGel. Persons taking AndroGel may experience enlarged prostates and increased serum prostate-specific antigen levels.

51.     Secondary exposure to AndroGel can cause side effects in others. In 2009, the FDA issued a black box warning for AndroGel prescriptions, advising patients of reported virilization in children who were secondarily exposed to the gel. Testosterone may also cause

physical changes in women exposed to AndroGel and cause fetal damage in pregnant women who come into secondary contact with the drug.

52. Since 2000, Defendants have employed a strategy to aggressively market and sell AndroGel by misleading potential users about the prevalence and symptoms of low testosterone, thus failing to protect users from serious dangers that Defendants knew or should have known to result from use of AndroGel.

53. Defendants marketed AndroGel by undertaking a "disease awareness" marketing campaign. This campaign sought to create a perception among consumers that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy, were actually attributable to "Low T."

54. Defendants' advertising campaign sought to create the belief in consumers and their physicians that use of AndroGel was a safe method of alleviating their symptoms, had few side effects, and would not interfere with their daily lives, even though Defendants knew or should have known these claims to be false and had no reasonable grounds to believe them to be true.

55. Defendants purposefully downplayed, understated, and ignored the health hazards and risks associated with using AndroGel. Defendants deceived potential AndroGel users by relaying positive information about AndroGel through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence while downplaying known adverse and serious health risks.

56. Defendants concealed material relevant information from potential AndroGel users and minimized user and prescriber concern regarding the safety of AndroGel.

57.     In the warnings related to AndroGel that Defendants have provided in their television, online, and print advertisements, Defendants have failed to mention any potential risk of cardiac event, stroke, pulmonary embolism, or other dangerous side effects related to blood clotting.

58.     In the warnings related to AndroGel that Defendants have provided in their television, online, and print advertisements, Defendants falsely represent that AndroGel was tested for all likely side effects.

59.     In the warnings related to AndroGel that Defendants have provided in their television, online, and print advertisements, Defendants fail to provide warning or instruction regarding the importance of adequate monitoring of hematocrit levels in AndroGel users.

60.     As a result of Defendants' advertising, marketing, and representations about AndroGel, men throughout the United States pervasively seek out prescriptions for AndroGel.

### Factual Allegations Specific to the Instant Action

61.     Plaintiff's Decedent Michael Komrada was 60 years old when he was prescribed and used AndroGel for symptoms he attributed to low testosterone as a result of Defendants' advertisements.  Mr. Komrada received a prescription for AndroGel and subsequently had the prescription filled on March 6, 2012.  Mr. Komrada began using AndroGel on March 7, 2012.

62.     Michael Komrada took AndroGel as directed without any knowledge of the significantly increased risk of serious cardiovascular injury associated with use of the product. Indeed, during that time, AndroGel contained no warning that cardiovascular risks were associated with use of the product.

63.     As a direct and proximate result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Michael Komrada went into cardiac arrest on

April 5, 2012. Plaintiff Gena Komrada, who was with Mr. Komrada at the time of his cardiac arrest, called 911 and requested emergency services. Mr. Komrada was rushed to the Virginia Hospital Center in Arlington, Virginia by paramedics. Despite significant efforts to save his life, Mr. Komrada died in the emergency room at Virginia Hospital Center on April 5, 2012.

64. The official causes of Michael Komrada's death were listed as cardiac arrest; ventricular fibrillation; and myocardial infarction (See Death Certificate, attached hereto as **Exhibit 2**).

65. Less than two months prior to his death, on February 24, 2012, Michael Komrada saw his primary care physician for a physical examination. Despite cardiovascular testing and extensive lab work, the examination did not reveal that Mr. Komrada was at a high risk for an adverse cardiovascular event.

66. Prior to using AndroGel, Plaintiff's Decedent Michael Komrada had no history of blood clots or significant cardiovascular problems.

67. Prior to Michael Komrada's use of AndroGel, Defendants knew or should have known that the original labeling of the product did not adequately warn Mr. Komrada and his physicians of the risks associated with using AndroGel as described above.

68. Prior to Michael Komrada's use of AndroGel, Defendants knew or should have known the defective nature of AndroGel and that persons who were prescribed and used AndroGel for even a brief period of time, including Mr. Komrada, were at an increased risk of serious health complications such as myocardial infarction, stroke, blood clots, and death. Defendants, through their affirmative misrepresentations and omissions, concealed from Mr. Komrada and his physicians the true and significant risks associated with AndroGel use.

69.     Michael Komrada was unaware of the increased risk for developing life-threatening injuries due to AndroGel use.  Had Mr. Komrada known the true risks associated with the use of testosterone medications, including AndroGel, he would not have used AndroGel and would not have suffered injury and death as a result of his use of AndroGel.

70.     As a direct and proximate result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Michael Komrada suffered severe injuries, including pain and suffering, and ultimately death.

71.     As a direct and proximate result of the negligence, carelessness, and other wrongdoing of Defendants, as described herein, Michael Komrada suffered severe mental and physical pain and suffering, emotional distress and severe injuries, including death, along with his Estate suffering economic loss due to necessary medical expenses, living-related expenses, lost wages, loss of earning capacity, and expenses related to death.

**Federal Standards and Requirements**

72.     Upon information and belief, the Defendants have or may have failed to comply with all federal standards and requirements applicable to the sale of their product, AndroGel, including, but not limited to, violations of various sections and subsections of the United States Code and the Code of Federal Regulations.

**II.     CAUSES OF ACTION**

**Count I – Strict Liability – Failure to Warn**

73.     Plaintiff hereby incorporates each and every allegation set forth above in the paragraphs of this Complaint as if fully rewritten herein.

74.      The Defendants are liable under the theory of product liability as set forth in §§402A and 402B of the Restatement of Torts 2d.

75.     The AndroGel manufactured and/or supplied by Defendants was defective due to inadequate warnings or instructions because Defendants knew or should have known that the product created significant risks of serious bodily harm to consumers, and they failed to adequately warn consumers, including Michael Komrada, and their health care providers of such risks.

76.     Defendants failed to adequately warn consumers, including Michael Komrada, and their health care providers that AndroGel could cause increased hematocrit levels and other physiological adverse health events that could cause heart attacks, strokes, pulmonary embolisms, cardiovascular events, blood clots, and death.

77.     Defendants failed to adequately warn consumers, including Michael Komrada, and their health care providers that while a patient was taking AndroGel it was necessary to frequently monitor hematocrit levels and perform other pertinent medical tests to prevent heart attacks, strokes, pulmonary embolisms, cardiovascular events, blood clots, and death.

78.     The AndroGel manufactured and supplied by Defendants was defective due to inadequate post-marketing warning or instructions because, after Defendants knew or should have known of the risk of serious bodily harm from the use of AndroGel, Defendants failed to provide an adequate warning to consumers, including Michael Komrada, and their health care providers, despite knowledge that the product could cause serious injury.

79.     As a direct and proximate result of Michael Komrada's reasonably anticipated use of AndroGel as manufactured, designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendants, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count II – Strict Liability – Design Defect

80.     Plaintiff hereby incorporates each and every allegation set forth above in the paragraphs of this Complaint as if fully rewritten herein.

81.     The Defendants are liable under the theory of product liability as set forth in §§402A and 402B of the Restatement of Torts 2d.

82.     Defendants and/or their corporate predecessors are the manufacturers, designers, distributors, sellers, labelers, or suppliers of AndroGel.

83.     The AndroGel manufactured and supplied by the Defendants and/or their corporate predecessors was defective in design or formulation in that, when it left the hands of the Defendants and/or their corporate predecessors, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, or it was more dangerous than an ordinary consumer would expect.

84.     The foreseeable risks associated with the design or formulation of AndroGel include, but are not limited to, the fact that its design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

85.     As a direct and proximate result of Plaintiff Michael Komrada using AndroGel as manufactured, designed, sold, labeled, supplied, marketed and introduced into the stream of commerce by the Defendants and/or their corporate predecessors, as well as Defendants' and/or their corporate predecessor's failure to comply with federal standards, he has suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count III – Negligence

86.    Plaintiff hereby incorporates each and every allegation set forth above in the paragraphs of this Complaint as if fully rewritten herein.

87.    At all time relevant hereto, Defendants had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, prescribe, and adequately warn of the risks and dangers of AndroGel.

88.    At all times relevant hereto, Defendants negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, marketed, labeled, packaged, prepared for use, and sold AndroGel and failed to adequately test and warn of the risks and dangers of AndroGel.

89.    Despite the fact that Defendants knew or should have known that AndroGel caused unreasonable, dangerous side effects, Defendants continued to market AndroGel to consumers including Michael Komrada, when there were safer alternative methods and/or no need to treat conditions such as loss of energy, erectile dysfunction, depression, loss of muscle mass, and other conditions that AndroGel marketing materials claim are caused by "Low T."

90.    Defendants knew or should have known that consumers such as Michael Komrada would foreseeably suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

91.    As a direct and proximate result of the negligence of Defendants, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count IV – Breach of Implied Warranty

92. Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten.

93. At all times relevant hereto, Defendants impliedly warranted to Michael Komrada and his agents and physicians that AndroGel was of merchantable quality and safe and fit for the use for which it was intended.

94. At all times relevant hereto, Michael Komrada was unskilled in the research, design, and manufacture of medical drugs, including AndroGel, and reasonably relied on the skill, judgment, and implied warranty of the Defendants in using AndroGel.

95. AndroGel was neither safe for its intended use nor of merchantable quality, as warranted by Defendants, in that AndroGel has dangerous propensities when used as intended and will cause severe injuries to users.

96. As a direct and proximate result of Defendants' breach of implied warranties, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count V – Breach of Express Warranty

97. Plaintiff hereby incorporates by reference each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

98. At all times relevant hereto, Defendants expressly represented and warranted to Michael Komrada and his agents and physicians, by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, and other written materials intended for physicians, medical patients, and the general public, that

AndroGel is safe, effective, fit and proper for its intended use. Mr. Komrada purchased AndroGel in reliance upon these express warranties.

99.     In using AndroGel, Michael Komrada relied on the skill, judgment, representations, and aforementioned express warranties of Defendants. These warranties and representations were false in that AndroGel is unsafe and unfit for its intended uses.

100.    As a direct and proximate result of Defendants' breach of express warranties, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count VI – Fraud

101.    Plaintiff hereby incorporates by reference each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

102.    At all times relevant hereto, Defendants willfully deceived Michael Komrada by concealing from him, his physicians, and the general public, the true facts concerning AndroGel, which the Defendants had a duty to disclose.

103.    At all times relevant hereto, Defendants conducted a sales and marketing campaign to promote the sale of AndroGel and willfully deceive Michael Komrada, his physicians, and the general public as to the benefits, health risks, and consequences of using AndroGel. Defendants knew of the foregoing, that AndroGel is not safe, fit, or effective for human consumption, that using AndroGel is hazardous to health, and that AndroGel has a propensity to cause serious injuries to its users, including but not limited to those injuries suffered by Mr. Komrada.

104.    Defendants concealed and suppressed the true facts concerning AndroGel with the intent to defraud Michael Komrada, in that Defendants knew that Mr. Komrada's physicians

would not prescribe AndroGel and Mr. Komrada would not have used AndroGel if they were aware of the true facts concerning its dangers.

105.     As a direct and proximate result of Defendants' fraudulent and deceitful conduct, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count VII – Negligent Misrepresentation

106.     Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

107.     At all times relevant hereto, Defendants made misrepresentations to Michael Komrada, his physicians, and the general public, including but not limited to the misrepresentation that AndroGel was safe, fit and effective for human consumption.  At all times relevant hereto, Defendants conducted a sales and marketing campaign to promote the sale of AndroGel and willfully deceive Mr. Komrada, his physicians, and the general public as to the health risks and consequences of the use of AndroGel.

108.     The Defendants made the foregoing representation without any reasonable ground for believing them to be true.  These representations were made directly by Defendants, by sales representatives, and other authorized agents of Defendants, and in publications and other written materials directed to physicians, medical patients, and the public, with the intention of inducing reliance and the prescription, purchase, and use of the subject product.

109.     The abovementioned representations made by Defendants were in fact false, in that AndroGel is not safe, fit, and effective for human consumption; using AndroGel is hazardous to health; and AndroGel has a propensity to cause serious injuries, including those injuries suffered by Michael Komrada.

110. The abovementioned representations made by Defendants were each made with the intention of inducing reliance and the prescription, purchase, and use of AndroGel.

111. In reliance upon Defendants' misrepresentations, and each of them, Michael Komrada was induced to purchase and use AndroGel. If Mr. Komrada had known of the true facts and the facts concealed by the Defendants, he would not have used AndroGel. The reliance of Mr. Komrada upon Defendants' misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

112. As a direct and proximate result of the foregoing negligent misrepresentations made by Defendants, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count VIII – Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and/or the Virginia Consumer Protection Act of 1977

113. Plaintiff hereby incorporates each and every allegation set forth above in the paragraphs of this Complaint as if fully rewritten herein.

114. At all times relevant hereto, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, (hereinafter "ICFA") prohibits "the use of any deception, fraud, false promise misrepresentation or concealment, suppression or omission of any material facts … in the conduct of any trade of commerce" and declares such acts or practices unlawful.

115. At all times relevant hereto, the Virginia Consumer Protection Act of 1977, VA Code § 59.1-196 *et seq.*, (hereinafter "VCPA") prohibits "[m]isrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; . . . [m]isrepresenting that goods and services are of a particular standard, quality,

grade, style, or model; . . . [and] [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

116.     Defendants researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and/or otherwise released AndroGel into the stream of commerce and in the course of same, directly advertised or marketed the product to health care professionals and consumers, including Michael Komrada.

117.     Defendants violated the ICFA and/or the VCPA by the use of deceptive, false, and misleading misrepresentations or omissions of material fact in connection with the marketing, promotion, and sale of AndroGel.  Defendants communicated, and continue to communicate, the purported benefits and safety of AndroGel while failing to disclose the serious and dangerous side effects related to the use of AndroGel with the intent that consumers, like Michael Komrada, and their healthcare providers rely upon the omissions and misrepresentations and purchase or prescribe AndroGel accordingly.

118.     Defendants intended that consumers like Michael Komrada rely on their deceptive, false, and misleading misrepresentations or omissions of material fact in order to increase their sales and profit of AndroGel, which was done in the ordinary course of their business.

119.     As a direct and proximate result of Defendants' violation of the ICFA and/or the VCPA, Michael Komrada was prescribed and used AndroGel, and as a result Mr. Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count IX – Negligence Per Se

120.    Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

121.    At all times relevant hereto, Defendants owed Michael Komrada a duty of care imposed by law pursuant to C.F.R. 201.57 to warn of serious adverse reactions and potential safety hazards in the labeling of AndroGel.

122.    At all times relevant hereto, Defendants' labeling for AndroGel did not adequately warn of the serious side effects associated with AndroGel, including the development of cardiac injuries and possibly death, thereby breaching Defendants' duty of care pursuant to C.F.R. 201.57.

123.    As a further part of their duty to exercise reasonable care, at all times relevant hereto, Defendants were obligated to follow public laws and regulations enacted and promulgated to protect the safety of persons such as Michael Komrada, including 21 U.S.C. §§ 331(a) & 352, and other statutes and regulations, which make it unlawful to misbrand prescription drug products.

124.    At all times relevant hereto, the labeling, including package inserts, for AndroGel failed to conform to the requirements of 21 U.S.C. § 352, and therefore violated 21 U.S.C. § 331(a), which prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

125.    Defendants misbranded AndroGel and thus violated 21 U.S.C. § 352 because AndroGel is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

126.     Because the Defendants each had a statutory duty under 21 U.S.C. § 352 (a) and (f) not to misbrand AndroGel, and because each of them violated this duty, they are guilty of negligence per se.

127.     AndroGel is further misbranded pursuant to 21 C.F.R. § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

128.     Defendants also violated 21 C.F.R. § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug AndroGel.

129.     AndroGel is mislabeled pursuant to 21 C.F.R. § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

130.     AndroGel is mislabeled pursuant to 21 C.F.R. § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug (i.e., cardiac arrest).

131.     Defendants have violated 21 C.F.R. § 210.122 because AndroGel's labeling and packaging materials do not meet the appropriate specifications.

132.     Defendants have violated 21 C.F.R. § 310.303 in that AndroGel is not safe and effective for its intended use.

133.     Defendants violated 21 C.F.R. §§ 310.305 & 314.80 by failing to report adverse events associated with AndroGel as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drug experience.

134.    Defendants violated 21 C.F.R. §§ 310.305 & 314.80 by failing to conduct an investigation of each adverse event associated with AndroGel, evaluate the cause of the adverse event, submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA, and keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

135.    Defendants violated 21 C.F.R. § 312.32 because they failed to review all information relevant to the safety of AndroGel or otherwise received by Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

136.    Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as Michael Komrada, making Defendants liable to Plaintiff, and further, because each of them violated the above referenced duties required by these statutes and regulations, they are guilty of negligence per se.

137.    As a direct and proximate result of Defendants' negligence per se, Michael Komrada suffered and his family continues to suffer from the injuries and damages set forth in this Complaint.

## Count X – Survival Action

138.    Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

139. As a direct and proximate result of the negligence of Defendants, Michael Komrada suffered severe injuries, resulting in extreme pain, suffering, debilitation, and ultimately death.

140. As a further direct and proximate result of the negligence of Defendants, Michael Komrada incurred substantial medical expenses arising from his care and treatment from the time of his cardiac arrest to his death on April 5, 2012.

141. As a further direct and proximate result of the negligence of Defendants, Plaintiff Gena Komrada has incurred substantial medical expenses arising out of the treatment rendered to the decedent, and funeral and burial expenses, and has suffered significant pecuniary loss as a result of the loss of services of the decedent.

## Count XI – Wrongful Death

142. Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

143. As a direct and proximate result of the negligence of Defendants, Michael Komrada suffered severe injuries, resulting in extreme pain, suffering, debilitation, and ultimately death.

144. As a direct and proximate result of the negligence of Defendants, the Plaintiff, Gena Komrada, as surviving wife of the decedent, has suffered and will continue to suffer mental anguish and severe emotional pain and suffering, pecuniary loss and damages, as well as the loss of society, companionship, comfort, protection, marital care, attention, advice, counsel, support, and guidance of the decedent, Michael Komrada.

## Count XII – Loss of Consortium

145.    Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

146.    At the time of the death of Michael Komrada, Plaintiff Gena Komrada and Plaintiff's Decedent Michael Komrada were lawfully married.

147.    As a direct and proximate result of the negligence of Defendants, Michael Komrada and Gena Komrada suffered wrongful and permanent damage to their marital relationship.

148.    As a direct and proximate result of Michael Komrada's untimely death caused by Defendants as set forth above, Plaintiff Gena Komrada has suffered and will for the rest of her life suffer the loss of her husband's society, affection, love, assistance, services, companionship, and consortium.

## Count XIII – Punitive Damages

149.    Plaintiff hereby incorporates each and every allegation as set forth above in the paragraphs of this Complaint as if fully rewritten herein.

150.    The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint, were willful and malicious.  Defendants committed these acts with fraud, malice, or willful and wanton conduct, done heedlessly and recklessly, without regard to consequence, and with a conscious disregard for the rights and safety of Michael Komrada and other AndroGel users and for the primary purpose of increasing Defendants' profits from the sale and distribution of AndroGel. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

151.    At all times relevant hereto, Defendants knew or should have known that AndroGel was in a defective condition and that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants knew or should have known that AndroGel presented a substantial and unreasonable risk of harm to the public, and as such, Defendants unreasonably subjected consumers of said drugs, including Michael Komrada, to risk of injury or death from using AndroGel.

152.    Despite its knowledge, Defendants, acting through its officers, directors, and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in AndroGel and failed to warn the public, including Michael Komrada, as to the extreme risk of injury occasioned by said defects inherent in AndroGel. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, distribution, and marketing of AndroGel despite knowing these actions would expose persons to serious danger, in order to advance Defendants' pecuniary interest and monetary profits.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiff:

A.    General damages in an amount that will conform to proof at time of trial;

B.    Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

C.    Loss of earnings and impaired earning capacity according to proof at the time of trial;

D.      Medical expenses, past and future, according to proof at the time of trial;

E.      For past and future mental and emotional distress, according to proof;

F.      Damages for loss of care, comfort, society, and companionship in an amount within the jurisdiction of this Court and according to proof;

G.      For punitive or exemplary damages according to proof;

H.      Restitution, disgorgement of profits, and other equitable relief;

I.      Injunctive relief;

J.      Attorney's fees;

K.      For costs of suit incurred herein;

L.      For pre-judgment interest as provided by law; and

M.      For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

_____

**COUNSEL FOR PLAINTIFF**

Tor A. Hoerman, Bar No. 6229439
TorHoerman Law LLC
234 S. Wabash, 7th Floor
Chicago, IL 60604
Phone: 312-372-4800
Fax: 312-284-4914
thoerman@torhoermanlaw.com

And

Michelle A. Parfitt (VA Bar No. 33650)
Ashcraft & Gerel, LLP
4900 Seminary Rd., Suite 650
Alexandria, VA 22311
T: (703) 931-5500
F: (703) 820-1656
mparf@aol.com
(Application for Admission *pro hac vice* to
be filed)